Mr. Brody. Good morning, and may it please the Court. I'm going to try to reserve three minutes for rebuttal, but we'll monitor that myself. Let me start first with the question of whether the warrant had probable cause. When you strip away the speculation and the conjecture in the warrant, what you're left with is actually very little. Appellant paid an application fee and was living in the apartment he paid that fee for, and the apartment manager thought that C.W. was appellant, and C.W. being the person whose name was on the actual application. You also have this drug transaction from two years prior, or roughly two years prior. What you don't have, crucially, is any evidence at all that the information on the application, C.W.'s information, was used without permission. Did C.W. give permission? We don't know. Did C.W. himself rent the apartment? We don't know. Was C.W. living there? We don't know. Why isn't the apparent impersonation, the fact that the landlord identified Langford as C.W., enough? It's not enough because the only thing we know from the warrant, if we read it very carefully, is that the apartment manager thought that Langford was C.W. That doesn't tell us anything about whether Langford represented himself as C.W. to the apartment manager. All it says is that the apartment manager thought that. We have no idea why.   Okay. I really don't think it says anything, and it's on the police at that point to say, why did you think that? Is it because he told you that he's C.W.? Is it because he otherwise indicated to you that he was C.W.? All we know is that the apartment manager thought he was C.W. I don't think that we can infer anything from that other than perhaps a presumption. Is it possible that he told the manager that, and that's why the manager thinks it? Yes, it's possible, but it's not a reasonable inference. And so we don't have, crucially, that evidence that Appellant was holding himself out as C.W. And again, I would pose the question— What about the Social Security number, the birth date, like the tax information, right? I mean usually you wouldn't use somebody else's personal information like that. Well, and that's—I appreciate, Ron, that question, and you're asking it in exactly the way I think that gives us some insight into how the warrant was worded. It says he used the information, but we don't know that he used the information. We know that the application for the apartment had that information on it. So—and we don't know how the application— Why isn't that a use? That it is on his application that he presumably filled out and, you know, probable cause isn't certainty, but why isn't that enough? Well, and I think Your Honor said it exactly right, that he presumably filled out, but we don't know that. We don't know how the application—who filled it out, and we don't know how it came to the general manager. Well, presumably would even be enough. I mean the rebuttal comes later on in the process. Do you concede if we have—if we hold that there was probable cause from the apartment information, then whatever problems might arise from the presentation of the drug information don't render the warrant invalid? Yes, I would agree with that. But why is the drug information—why should we not consider that? Because, I mean, isn't—we're kind of saying, well, maybe somebody would allow somebody else to use their apartment and even use their birth date and social security number perhaps. But what if we also know that the person who's doing this is somebody where there's indications even a year or two ago was involved in drug dealing? Well, I think that leads to an untenable result, which is that you can make these—you can build this inferential chain where there are such weak links. So at the very foundation of that set of inferences is this notion that because Appellant was engaged in a drug transaction, let's say roughly two years ago, that he's still a drug dealer. And if you go on from that point and say, well, okay, if he's still a drug dealer, he's probably involved in using false identities and therefore is probably on the premises and so on, each link has to stand up. And that very first one collapses. This court—many courts have recognized the ephemeral nature of drug evidence and the fact that unlike some other forms of evidence, the longer the period transpires between the initial offense and some presumptive subsequent offense, the less probable cause there is. So, Mr. Brody, can I take you to the March 19th warrant with an eye on the clock here? So with respect to the phones, I mean why wouldn't at the very least good faith apply here? The government went back to court describing exactly what it was going to do and got an order saying that it could do it. Because it left out the absolutely crucial information that it had not yet submitted the phones. It didn't give the magistrate— Why is that crucial? It still doesn't have the phones back. It's crucial because I think it's essentially undisputed. I don't know what my colleague is going to say, but I think it's undisputed that the extent—the length of time over which the government maintains possession over somebody's electronic device, a phone for example, increases the incursion on their Fourth Amendment rights. And you have to balance that when you're applying—when you're granting a warrant. You have to balance that against the government's legitimate interest in pursuing extraction of that data. But when you don't— Counsel, do we properly take into account the fact that your client never sought return of the phones before then? I think the court can consider that, and I will say, though, that the motion to suppress is still an assertion of my client's privacy rights. And so I think to say that it has to come in the form of a Rule 41 motion for the return of property would be to elevate form over substance. But even if Your Honor is right that not having asked for the phones back sooner diminishes slightly my client's privacy rights, it still has to be weighed against the government's legitimate interest. And that—there is no legitimate interest in simply sitting on the phones for months on end without even submitting them a pronouncement. Do you think the issue is that they didn't search it or that they didn't tell the magistrate that they hadn't begun searching it? I think it's a combination of those two things, but I think it's both. It shows a lack of diligence, and it negates—it shows a lack of diligence, which is an incursion of my client's Fourth Amendment rights, which is unacceptable on its own. And in addition to that, it cannot be rescued by the warrant or any sort of good-faith reliance on the warrant because the warrant was obtained, in effect, under false pretenses. That is, by misleading the judge without including this very crucial information. And I would point out—I'll just say this very briefly since I know I'm running out of time—that the warrant application or the rollback—pardon me, the application for an extension of time said we've got a backlog. And not only did they not know that was the case because they hadn't submitted it, but in fact, after they submitted the phones, I believe the first phone was—the data was extracted almost immediately. And the second phone, it was about within a month. So it turns out, at least at the time they later submitted it, there really was no backlog. And all of this— But, I mean, are you contending that statements in the—and we'll give you time for rebuttal. So are you contending that statements made in the request for the extension were inaccurate at the time they were made? Yes, insofar as they omitted a crucial fact, which was the failure to have submitted the phones, even have submitted the phones for analysis. But did they say otherwise? I mean, I think you're saying, well, they omitted this fact, which I gather you think is important because it just shows they hadn't even started this project. But I'm trying to figure out, well, why is that significant? I mean they did go back to the court and say they needed more time to do this. I mean I think an implication is that they either hadn't started it or they hadn't completed it, one of the two. Well, they said that there was a backlog. I'd like to ask you about the backlog question. The fact that they were able to process the phones or search the phones relatively soon after receiving the extension, to me, does not logically imply that there had been no previous backlog. I mean sometimes there's a backlog and it's cleared. I agree with that, Your Honor. I agree with that. So to me, there's kind of a disconnect. And when they say there's a backlog, there may have been. And I guess I don't really follow the logic. I understand. And I think you're right. It doesn't mean there wasn't a backlog at the time. But whether there's a backlog or not, it's clear that submitting the phone sooner is going to result in the data extraction sooner. And not submitting them all is inevitably going to delay the extraction. And if I could just return very briefly to your question, I refer the court to the Metter case, the Southern District of New York case, because that dealt with exactly the same scenario. And the answer that court gave was, look, the failure to submit it is a violation of the defendant's order. Well, Metter seemed to involve a little more back and forth with the court, right? By the time the order was issued in Metter, there was – the court itself had already said, all right, what's going on, speed it up a little bit here. And there's none of that here. There's none of that here because the government didn't tell the court we haven't submitted it yet. If they had told the court, Your Honor, we haven't even submitted this, it may very well have had exactly that back and forth. I think a court, a magistrate would say, why haven't you submitted it? Neither did the defendant. Well, the defense at that point didn't know the truth about – I mean at the time – Well, they didn't have the phone back, right? There was still no request, which would have been a cue. Yes, that's true, although even if the phone had come back, the mirror image might have been delayed in its extraction as well. Is this part of the process ex parte? Yes. Yes, it is, Your Honor. All right. We'll put three minutes on the clock for your rebuttal. Thank you, Your Honor. Thank you, Mr. Brody. We'll hear from the United States. Good morning, and may it please the court. Rajesh Srinivasan for the United States. Neither warrant in this case was defective. The March 12th warrant was supported by ample probable cause based on allegations of ongoing identity theft and reasonable inferences drawn from those allegations, which magistrate judges are allowed to consider in granting a warrant. The March 19th warrant was executed without any delay, let alone unreasonable delay, and officers were allowed to subsequently review the data on those phones in accordance with the terms of the warrant under Rule 41e2b. At a minimum, any lack of bad faith makes suppression unwarranted. Unless the court wants me to start elsewhere, I will begin with the delay issue. The argument in the defendant's brief is limited to whether there was an unlawful delay in execution of the warrant. But Rule 41 answers this question. A warrant for digital devices is deemed executed upon seizure of the devices, not upon subsequent review of the data. Are there any Fourth Amendment, just to go to assuming that the rule were outside of the rule, what are the Fourth Amendment constraints here? The Fourth Amendment constraints, I think, would not be anything to do with the search. The search would be the same if you performed it on the day after you seized the phones versus 15 months, 20 months later, or eight months here. But I think the concern would be the retention of the phone. So the Fourth Amendment interest that the defendant would have is in the continued seizure of the phone. However, there is no Fourth Amendment harm that the defendant identified here in the context of the retention of the phone. As you pointed out, Judge Johnstone, he didn't ask for the phone back. And indeed, even in the briefing here, I don't see any complaints about the continued seizure of the phone being an impediment to defendant's privacy rights. What do we do under the – for Fourth Amendment purposes when the warrant has expired by its own terms and then we get a couple months later an order? I understand – I mean from the record that with respect to Thompson, the government went and got a second warrant. I'm not sure why it didn't do it here, but why shouldn't we require a warrant once the original warrant has expired? I wouldn't frame the issue here as a warrant expiration because the warrant was executed as soon as the phones were seized. There were limitations on how the government would later review the devices. But in those limitations, there was a provision that allowed the government to ask for extensions of time to review those devices, which is exactly what the government did here. After they were unable to review the data in the first 120 days, they went back to the court and asked for an extension and then completed the review within that time period. And my colleague is incorrect that the issue that the court should be focusing on is when the government started the review rather than when they finished the review. If the interest here is the continued retention of the phone by the government, the continued seizure, then it doesn't matter when the government started review. It matters how long the defendant was deprived of their phone without the government having a – some legitimate need to maintain the phone. But wouldn't that at least be true of the gap between the expiration of the warrant by its own terms? I mean what's the legal status of the warrant after it's expired on its own terms and before the government has asked for an extension? The legal status of the phone is that it was a phone that was lawfully seized pursuant to a warrant. And there – I have found no case that says that once evidence is seized under a lawful warrant that the government has to give back the evidence at some point in the litigation. So the 120 days just went to search and so that's what the extension was covering. The seizure was – remained fine under the warrant. That's correct. And if the government had searched the phone outside of those 120 days without seeking an extension, we might have a different issue in terms of compliance with the terms of the warrant. And the defendant I think then would have to show some sort of prejudice and malfeasance and bad faith on the government's part in order to get suppression even in that scenario. But, of course, that is not the situation we have here where the government did go back to the court and ask for an extension. But at a minimum – The warrant doesn't give a time period. It says, well, you can't – it makes provision for extensions, which you got. It doesn't say you can't – you have to seek such an extension within such a reasonable time. So what would happen if the government had seized this and then held the evidence for years and then gone back and sought an extension? Does that raise a Fourth Amendment question? I don't think it raises a Fourth Amendment question in as much as a magistrate would – if a magistrate granted an extension, I don't think it would raise a Fourth Amendment question. Could a magistrate deny that extension on the ground that it raises a Fourth Amendment question? I think the – I'm not sure they could deny it on the ground that it raises a Fourth Amendment question, but they could certainly deny it on a lack of good cause for an extension. A magistrate judge could reasonably conclude that the government had plenty of opportunity to review the phone data, and they can't renew their review period after sitting on this evidence for years. But I'm not sure how that works, right? So the consideration of cause for the warrant is done up front. The extension is by itself not a warrant, so it doesn't contain that consideration. So it's just – it's unclear to me how whatever the magistrate is doing in issuing the first warrant on its own terms for a search of 120 days can possibly kind of be perpetual then when that's not considered at the time of the warrant. If I understand your question correctly, Judge Johnstone, I think you're asking how a magistrate could account for the government's delay in reviewing a phone for years after. And I think that – It would be one thing if the government asked for that and foresaw that, and that's when the warrant issued. But this second document is not a warrant under the Fourth Amendment. It's an extension, but I'm not sure what to make of that, what that is. I think what it is is an extension of the terms of the warrant under which the government was allowed to review it. As I said, if the government didn't seek an extension, I think we would have a different case and we would be analyzing this issue differently. So I think the way that this court should look at it is the government can act within the terms of the warrant by reviewing the data within 120 days. Outside of that time period, the government would be acting outside of the terms of the warrant. But if the government receives an extension, then they are back within – acting within the warrant's terms. Have we approved a search pursuant to such an extension before? I can't recall a case that dealt with this precise issue, but courts in this circuit routinely grant extensions for reviewing digital devices. And certainly an extension that span less than eight months is frequently granted. There's an allegation that in seeking the extension, the government wasn't forthcoming about the backlog and some other facts. How do you respond to those charges? Two responses. One, the defendant here didn't directly challenge the extension. And in the warrant context, in the warrant affidavit context, the defendant needs to prove that an omission of a fact was deliberate or reckless as well as material. And the defendant here has made neither showing. But to your point earlier, Judge Bress, the reasonable implication from the application is that review had not – at least was not completed if not begun. And as I said earlier, I'm not sure if it's material, that review, whether review has been started or not. Because the real question for the defendant is when is the review period going to be up? How long is the seizure going to be? So if the government starts review on day one and ends it on day 120, the defendant's in the same position as if they start review on day 119 and end it on day 120. So I don't think when the government starts review is a relevant question under the Fourth Amendment. Regardless of any of these issues, the court could avoid ruling on these issues by simply going to the good faith exception. There is no evidence of bad faith in this case. The officers went back to the court at every step asking for permission to seize evidence, asking for permission to review the data on the phones. And there is no reason that suppression would deter police misconduct here where police acted exactly as they should have under the Fourth Amendment. I guess do you have any explanation? I mean, just your knowledge in the case why there is a second warrant for the Thompson phone and not for the Langford phone? I do not have an explanation for that. Okay. Thank you. Thank you for your presentation. Thank you, Your Honors. I will respond to that just by saying that the Fourth Amendment is the be-all, end-all here. It is the last word in this analysis. And to the extent that the government is suggesting that because the warrant was already executed, there was no upper limit on the amount of time that they could take to review the phone, that's false. This court has applied the Fourth Amendment analysis to the length of time in which the government has to extract data and review the contents of that data. In fact, if you look at the – and this isn't – Where there's a warrant or other order in place expressly authorizing it? No warrant – no order can trump the Fourth Amendment. And I agree with Your Honor that if the government had provided sufficient information to the court that justified the extension of time, that that would be a finding essentially by the court that it was within the Fourth Amendment. That's the magistrate's analysis, and that's the extension analysis. Is this within the Fourth Amendment? And I want to make what I think is a crucial point, which is that it's not – the harm to the defendant is not that he didn't get his phones back in time. The harm to the defendant in a case like this is that the government possesses extensive personal information for a long period of time. That's the harm that the Supreme Court has recognized. But why should it matter then when they'd started or finished or whether they'd started the search? Because the sooner that they start the search and the sooner that they complete the search, the sooner all of the information that is irrelevant to the case goes out of possession of the government. And that is exactly why, for example, even the Second Circuit has held that when the government is reviewing the mirror image of data, not even the device itself, that that is limited by a Fourth Amendment analysis because the government just can't sit on your personal data, this extensive personal data that you might find in a cell phone, forever. And they can't cure that just by saying, wait, here's your phone back because the same analysis applies even to a mirror image. Also, I just – I wanted to point out that in the Rule 41 advisory notes, they considered – they state that they considered putting an upper limit on how long the government is allowed to spend reviewing it. But they rejected that because there are a lot of factors to consider in terms of how long it should appropriately take. And that is a nod by the committee to the fact that they can't give a one-size-fits-all number, but it's ultimately governed by a reasonableness analysis. So there's no suggestion even in Rule 41 itself that that would somehow trump the Fourth Amendment analysis. So here, I mean the amount of time that they had, it was not especially long beyond the time that they were already authorized initially. So the nature of some of my questions to the government is what if they hold this for years and that's not this case? So what was unreasonable about just the quantum of time that we had here given the rest of the authorization that they already had in the first place? And again, I think the – it's the weighing analysis. It's the – is the intrusion on the defendant's privacy justified by the government's legitimate interest in maintaining it? And that determines how long they can hold it. And there is no legitimate interest in not submitting the phones at all. And so any – that – there was no interest, no legitimate interest in that four-month period during which they didn't even put the phones in queue to be reviewed. And for that reason, then I say it falls in favor of the appellant. Okay. Thank you very much. Thank you. Thank you very much. We thank both counsel for the helpful briefing argument. The case of United States v. Lankford is submitted.
judges: GRABER, BRESS, JOHNSTONE